UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

VALERIE MCKINNEY )
)
V. ) NO. 2:14-CV-168
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. This is an action for judicial review of the Commissioner's final decision denying the plaintiff's application for disability insurance benefits following a hearing before an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

This is a very unusual case. The plaintiff, born November 3, 1953, is now 61 years of age. On her alleged disability onset date, December 17, 2010, she was 56 years of age, which is "advanced age" under the Commissioner's regulations. 20 CFR Ch.III, Pt. 404. Supt. P. App. 2, Rule 200.00(f). The ALJ found her residual functional capacity ["RFC"] to extertionally be to perform light work "with the following limitations: frequent postural movements; no climbing ropes, ladders, or scaffolds; and avoiding concentrated exposure to extreme heat and cold, fumes and other respiratory irritants, and hazards." (Tr. 15). The Commissioner utilizes a five-step sequential evaluation process found at 20 CFR 404.1520(a) to determine if an applicant is entitled to benefits. Under this process, the first step is a determination of whether the person is working. Plaintiff is undisputedly not. The second step is a determination of whether the person has a severe impairment. The ALJ found that she does. There appears to be no dispute that she fails to meet or equal the requirements of any "listed" impairment. At this point in the process the ALJ determined the plaintiff to have the foregoing RFC.

If the process reached the fifth step of the process in plaintiff's case, a person of plaintiff's age, education and previous work experience who is capable of a full range of light

2

work is nonetheless disabled under Rule 202.06 of the Medical-Vocational Guidelines [the "Grid"]. Thus, the *only* way that the plaintiff could not be found to be disabled as a matter of law would be if, at step four of the process, she was found to be capable of returning to past relevant work. Plaintiff's only past relevant work was as a pharmacy technician. This step four determination that she can do this work, where she would undisputedly be disabled at step five, is what makes this case unusual. However, unusual or not, if the ALJ's findings were supported by substantial evidence, and if he committed no errors of law, the Commissioner's decision should be affirmed.

The plaintiff's medical history is summarized as follows:

> Plaintiff saw her primary physician, Wesley Hanson, M.D., in November 2010 for a follow-up appointment regarding diabetes and denied any sores on her feet (Tr. 240). Plaintiff scored a zero on a questionnaire screening for depression (Tr. 226). She returned to Dr. Hanson the next week and received an injection for neck pain (Tr. 239). The next month, Plaintiff saw Dr. Hanson for a blister on her left great toe, which the doctor debrided (Tr. 239).
> In January 2011, Dr. Hanson completed an opinion form at the request of the state agency and opined that Plaintiff had diagnoses of diabetes, COPD, and worsening depression (Tr. 219-21). Dr. Hanson indicated that Plaintiff had adequate memory, but moderate impairments in concentration and in social ability (Tr. 220). Dr. Hanson indicated that Plaintiff could not carry out simple instructions or maintain a work routine without frequent breaks and inordinate supervision; could not respond appropriately to normal stress and routine changes; and could not maintain a consistent work schedule due to psychological issues (Tr. 221).
> In March 2011, Plaintiff saw psychological examiner Kathy Jo Miller, M.Ed., for a consultative mental evaluation (Tr. 151-56). Plaintiff reported that she was claiming disability "mostly all" due to physical impairments (Tr. 151). She said that her primary care physician prescribed medication for depression and anxiety, and that she had never undergone psychiatric hospitalization or treatment at a mental health center (Tr. 151-52). On examination, Plaintiff appeared to be mildly depressed and seemed "quite personable and friendly" (Tr. 153-54). Ms. Miller, along with psychologist Robert Spangler, Ed.D., assigned a global assessment of functioning (GAF) score of 65 and assessed opiate dependence (currently in methadone treatment program) and depression in good pharmacological control (Tr. 154). Ms. Miller and Dr. Spangler also assessed work-related restrictions (Tr. 155). They opined that Plaintiff had an adequate ability to sustain concentration and was not significantly

3

limited in her ability to understand and remember, interact socially, or adapt to changes, but showed limited persistence due to disorganization in her daily life (Tr. 155).

The next month, Frank Kupstas, Ph.D., a psychological consultant with the state agency, reviewed the record and concluded that Plaintiff had no limitation in understanding and memory or in social interaction (Tr. 167-83). Dr. Kupstas also opined that Plaintiff could adapt to change and could maintain concentration, persistence, and pace for at least two hours (Tr. 183).[1] In January 2012, Dorothy Tucker, Ph.D., another psychological consultant with the state agency, reviewed the record and affirmed Dr. Kupstas' opinion was written (Tr. 297). In doing so, Dr. Tucker gave great weight to Ms. Miller's and Dr. Spangler's opinion, which Dr. Tucker found consistent with other evidence in the file (Tr. 297).

In March 2011, Plaintiff also saw Krish Purswani, M.D., for a consultative physical examination (Tr. 157-66). Plaintiff reported numbness in her legs and feet and said she had sores on her feet—but she did not know if the sores were related to diabetes (Tr. 157). She also reported a 17-year history of neck pain, an 11-year history of shortness of breath, and a 10-year history of panic attacks (Tr. 157). On examination, Plaintiff showed "very limited" effort and sometimes refused to perform certain examinations, including rotating her neck and taking deep breaths (Tr. 158-59). Her shoulders, elbows, wrists, hands, knees, and ankles appeared normal and had normal ranges of motion (Tr. 159). She had a small shallow ulcer on her right foot and small bunions on both feet, which otherwise appeared normal (Tr. 159).

After the examination, Dr. Purswani concluded that Plaintiff could lift 40 pounds from the floor for two-thirds of a workday (Tr. 160-61). Dr. Purswani also found that Plaintiff could stand and walk for six hours and sit for eight hours over the course of a full workday (Tr. 160, 162). Dr. Purswani opined that Plaintiff could stand for an hour at a time without interruption and could walk for 10 to 30 minutes at a time (Tr. 162). Dr. Purswani further opined that Plaintiff could frequently reach, handle, finger, feel, operate foot controls, balance, stoop, kneel, crouch, crawl, and climb (Tr. 162-63).

In June 2011, Plaintiff was admitted to the hospital for nausea and vomiting (Tr. 194-218). She had originally arrived at the emergency room with symptoms of a migraine headache, and laboratory results indicated severe dehydration and acute

---

[1] On the portion of the form entitled "summary conclusions," Dr. Kupstas indicated that plaintiff was "moderately limited" in the ability to maintain attention and concentration for extended periods, in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in the ability to complete a normal workday and workweek without interruptions frm psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In all other respects, Dr. Kuptas opined that the plaintiff was "not significantly limited." (Tr. 181-182).

4

renal insufficiency (Tr. 194). She was admitted and provided with intravenous hydration, which improved her renal insufficiency (Tr. 194). On discharge the next day, Plaintiff was tolerating food well, could walk without difficulty, and showed stable vital signs (Tr. 194).

That week, a chest x-ray revealed mild cardiomegaly and mild scarring of the lung fields (Tr. 187). On examination before pulmonary function testing, Plaintiff was not suffering from acute respiratory illness (Tr. 188). She did not have wheezing or bronchial spasms (Tr. 188).

Plaintiff returned to Dr. Hanson in August 2011 for refills of medication for joint pain (Tr. 222-24). Dr. Hanson assessed osteoarthrosis, as well as diabetes "without mention of complication" (Tr. 223).

Two months later, in October 2011, Plaintiff saw Martin Tran, D.O., for evaluation of renal insufficiency (Tr. 271-76). Plaintiff's lungs sounded clear and a neurological examination was grossly normal (Tr. 273). Dr. Tran noted that Plaintiff's most recent serum creatinine test indicated stage IV chronic kidney disease (Tr. 273). Dr. Tran advised her to stop taking non-steroidal anti-inflammatory drugs (NSAIDs) (Tr. 273).

On December 8, 2011, Roslynn Webb, M.D., a state agency medical consultant, reviewed the record and opined that, in an 8-hour workday, Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, stand and/or walk for about 6 hours, and sit for about 6 hours (Tr. 284-92). Regarding postural limitations, Dr. Webb found that Plaintiff could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (Tr. 286). The next month, Thomas Thrush, M.D., another state agency medical consultant, reviewed the record and affirmed Dr. Webb's opinion as written (Tr. 293).

Also in December 2011, Plaintiff complained to Dr. Hanson of anxiety and leg pain (Tr. 315-17). She rated her pain a 4 out of 10 (Tr. 316).

Plaintiff saw Dr. Tran in March 2012 for a follow-up appointment regarding kidney disease (Tr. 299-300). Plaintiff's heart, lungs, and abdomen appeared normal (Tr. 300). Her extremities showed some swelling, and her neurological functioning was grossly intact (Tr. 300).

In May 2012, Dr. Hanson observed that Plaintiff had five foot ulcers (Tr. 312-14). Plaintiff did not want wound care, so Dr. Hanson prescribed antibiotics (Tr. 313). That week, Dr. Hanson wrote a letter in which he opined that Plaintiff was "unable to work because of numerous medical problems," including diabetes with severe foot ulcerations, chronic kidney failure, neck and back pain, COPD, and anxiety (Tr. 298).

Plaintiff saw Dr. Hanson two months later and complained of frequent urinary tract infections and a five-day history of right flank pain after a fall (Tr. 309-11). On examination, her right ribs were tender (Tr. 310).

Five months after that, in January 2013, Plaintiff returned to Dr. Tran for another follow-up regarding kidney disease (Tr. 301). She reported some right flank discomfort and some swelling, which, Dr. Tran advised her, was not likely related to her kidney (Tr. 301). Examinations of the heart, lungs, and abdomen were normal

5

(Tr. 302). Plaintiff showed no swelling in her extremities, and her neurological functioning was grossly normal (Tr. 302). Dr. Tran ordered Plaintiff to continue taking her current medications and referred her for a renal ultrasound, which revealed a cyst in the right kidney (Tr. 302).

    Plaintiff returned to Dr. Hanson the next month and reported that her diabetes was managed with oral medications (Tr. 306-08). She did not report any foot ulcers (Tr. 306). Dr. Hanson observed blisters on Plaintiff's heel and decreased sensation in her feet (Tr. 307).

[Doc. 17, pgs. 2-6].

At the administrative hearing, the ALJ asked Ms. Donna Bardsley, a vocational expert ["VE"] to assume a person of plaintiff's age, education, and work experience. He then asked Ms. Bardsley to "assume this person can do light work, frequent posturals, no ropes, ladders, scaffolds, avoid concentrated exposure to extreme heat and cold, to fumes and other respiratory irritants and to hazards. And there are no non-exertional limitations that I'm going to give you or cognitive limitations...could she do her past relevant work?" Ms. Bardsley responded that plaintiff could do her past relevant work with those limitations. She also opined that the plaintiff could perform numerous other jobs, with 8,000 in the region and 12 million nationwide. (Tr. 44). He then asked her to assume the plaintiff could only work at the sedentary level, and she identified 2,000 regional and two and a half million national jobs. (Tr. 44-45). However, this testimony is irrelevant because she would be disabled under Grid Rule 202.06, as aforesaid, even if she could do the full range of light work due to her advanced age.

Plaintiff's attorney then examined the VE about plaintiff's ability to do her past relevant work. He asked "if you were to accept (Dr. Purswani's) opinion that the claimant can onkly walk 10 to 30 minutes a day, could only stand for an hour at a time, and could only stand or walk for six hours in an eight hour work day, could that person do the job as a

6

pharmacy technician?" Ms. Bardsley asked to look at Dr. Purswani's report before answering. The ALJ advised her to look at Exhibit 3F, which was Dr. Purswani's report. After some unspecified time looking at the report, the VE said "no."

In the hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease, diabetes, chronic obstructive pulmonary disease, hypertension, and chronic kidney disease. He found no other physical severe impairments. (Tr. 13).

He also found that the plaintiff's mental impairments of depression, anxiety and opiate dependence were not severe. (Tr. 14). In making this finding, he discussed the consultative psychological exam and report by Dr. Spangler and Ms. Miller, noting their diagnoses of opiate dependence" depression in good pharmacological control; average intellectual functioning; and a GAF of 65. He stated "the examiners opined the claimant has no signficant limitation in the ability to understand and remember, adequate ability to sustanin concentration, limited persistence on what appears to be disorganization related to daily life, and no significant limitations in social interaction or adaptation." He also noted the plaintiff's normal activities of daily living. Based on all of these, he found plaintiff's mental impairments "cause no more than 'mild' limitation..." and thus "they are nonsevere." (Tr. 14).

He then stated that the plaintiff's RFC was as noted above and as related to the VE in the hypothetical question he posed to her at the hearing. (Tr. 15). He discussed her musculoskeletal pain, her diabetes, her COPD and hypertension. Regarding the diabetes, he said "there is no evidence of chronic non-healing ulcers..." He noted that her blood sugars were well controlled on oral medications. (Tr. 16).

7

He then discussed the examination by Dr. Purswani. He mentioned that Dr. Purswani noted the ulcer on plaintiff's right toe, and stated that her "sensation was normal other than some decrease in sensation in the right foot and ankle." He noted that "she had an antalgic gait but used no assistive devices." He then stated that the plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 16). He stated "there are no sensory, reflex, or motor deficits of the upper extremities." He said there was no weakness of the upper or lower extremities, and that "she walks unassisted." (Tr. 17).

The ALJ said that he had given consideration "to third party reports." Presumably, he was referring to reports by Gail Slagle, the chief pharmacy technician at plaintiff's former place of work, and Dr. Samantha Lancaster, a pharmacist there. Ms. Slagle was Ms. McKinney's immediate supervisor. She stated that "due to her diminishing physical and mental health, we were no longer able to rely on her...she was unable to stand for any length of time, and in our job, standing is ALL we do. The ulcers on her feet made it impossible to stand on them." Ms. Slagle concluded that the plaintiff was "NOT able to perform the duties required to maintain this or any job." (Tr. 146). Dr. Lancaster said that when she first started working with the plaintiff in 2004, "she was able to keep up with the dispensing work load and compounding. Compounding requires standing for extended periods of time..." She stated that plaintiff's "pain in her back and feet made it impossible for her to be effective at her job." (Tr. 147). Regarding these pieces of evidence, the ALJ stated that "the severity of the claimant's condition as reported by third parties is not supported by the totality of the evidence for the reasons stated above." (Tr. 17).

He then reviewed and weighed the medical opinions. He found that he gave the greatest weight to the State agency medical consultants who found she could do a limited range of light work. He only gave "some weight" to Dr. Purswani, but disagreeing with his opinion that the plaintiff could meet the lifting requirements of medium work, finding "the totality of the evidence is more consistent with limitations to light work activity." He did not mention, here or elsewhere, Dr. Purswani's limitations on the plaintiff's ability to stand for more than one half hour at a time. (Tr. 17-18).

He gave "some weight" to Dr. Spangler and Ms. Miller in their evaluation that the plaintiff had "no significant limitations in (some) areas of mental functioning" as being supported by their "essential normal mental status examination" and "treatment records that reflect no chronic mental health complaints or mental abnormalities." He then stated that their finding of "more than mild limitations in concentration, persistence or pace...are not 'well supported' by the documentary or other evidence of record," but were "based on a one-time observation of the claimant." He did not discuss the "moderate" limitations in certain areas opined by State agency psychologist Kupstas discussed in the summary of the medical evidence above. (Tr. 19).

He then discussed the opinions of plaintiff's treating physician, Dr. Wesley Hanson. He did not discuss any of Dr. Hanson's physical limitations due to her severe, recurrent foot ulcers or kidney problems (TR. 298 and 319), but only Dr. Hanson's opinions regarding plaintiff's mental problems (Tr. 219-221), finding them not consistent with the consultative mental examination, Dr. Hanson's treatment records, and activities of daily living. (Tr. 18).

He found that the plaintiff could perform her past relevant work as a pharmacy

9

technician. Alternatively, he found that she could perform numerous jobs in the national economy based upon the testimony of the VE.[2] Accordingly, her found that she was not disabled. (Tr. 18-19).

Plaintiff first asserts that the ALJ erred in not giving proper weight to Dr. Hanson as her treating physician, both as to her physical and mental impairments. A treating doctor's opinion is entitled to great weight, even controlling weight, but only if it is well supported by clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(c). In a great many cases, there is a considerable lack of support in a treating source's notes, and clear evidence contradicting his or her opinions in the findings and opinions of other sources and in a plaintiff's own statements and activities. Thus, an ALJ has broad, but not unbridled, discretion to not accept part or all of a treating source's opinions. In any event, the ALJ must explain in some reasonable detail his reasons for not accepting the opinion of a treating source. All of this is based upon the premise that a long term treating provider would normally be in better position than a one-time examiner, or a non-examining source, to opine on his or her patient's capabilities and infirmities. At the same time, there is a defense mechanism to prevent an ALJ from being saddled with an unscrupulous source who will say anything to keep the patient happy.

From a mental perspective, the plaintiff was taking prescriptions for Alprazolam, Sertaline, and Amitriptyline to treat her anxiety and depression (Tr. 152). By all accounts, the medications were helping. Dr. Hanson did not indicate that the plaintiff was having

---

[2] Once again, the Court fails to see how this finding makes any difference since she would be disabled under Rule 202.06.

10

psychotic episodes, or any other "marked" mental problem. He instead opined that she had moderate impairments in the areas of concentration and social ability on the form provided by the State agency (Tr. 220). These opinions were shared by Dr. Kupstas (Tr. 181 and 182). Dr. Spangler and Ms. Miller said that while the plaintiff's "ability to sustain concentration was adequate," her "persistence appears to be limited on what appears to be disorganization related to daily life." (Tr. 155). The Court does not profess to know exactly what this last statement means, but the ALJ interpreted it a suggestion that the plaintiff had "more than mild limitations in concentration, persistence, or pace" and found this conclusion by them was not well-supported by the record but was based on a one time evaluation. But Dr. Hanson had the same opinion of moderate limitations based upon years of being her treating physician. And Dr. Kupstas also found moderate limitations based upon his review of all of the records, including Dr. Hanson's and the report of Spangler and Miller.

The point is, the mental health professionals did not disagree with Dr. Hanson in these areas, but found a moderate degree of limitation. Dr. Kupstas found that she was able to maintain concentration, persistence and pace for periods of at least two hours. Is this sufficient when the only job you can do and not be disabled is filling prescriptions in a drug store? In the opinion of the Court, this was a question for the VE, but the ALJ clearly told the VE that he was finding no mental (non-exertional) impairment whatsoever.

Even more difficult to dismiss are the opinions of Dr. Hanson based upon the plaintiff's foot ulcers. It is true that the State agency physicians who looked at the plaintiff's medical records did not believe the plaintiff had limitations in standing and walking (Tr. 285) and explained that the restriction opined by Dr. Purswani did not "appear" to "have benefit

11

of totality of " medical evidence of record" (Tr. 290). However, Dr. Hanson saw the ulcers. This, along with her kidney problems and COPD factored heavily in his opinions (Tr. 298 and 319), and those opinions were a year apart. Dr. Purswani also saw an ulcer on her foot and noted an antalgic gait.

The Court notes generally conservative treatment by Dr. Hanson, although the Court is unsure what "aggressive" treatment would be necessary or useful for kidney disease or COPD or the effects of her diabetes.

Finally, there is the unequivocal finding of Dr. Purswani that the plaintiff could only walk for 10 to 30 minutes without interruption or stand for more than one hour without interruption. The ALJ did not address this in his opinion. Obviously, if she cannot do this it could very well have a negative impact on the VE's opinion as to whether she could work as a pharmacy technician.

The Commissioner points out that the record of the hearing and cross examination of the VE indicates that counsel for the plaintiff did not quote Dr. Purswani correctly, but instead indicated Purswani found "the claimant can only walk 10 to 30 minutes a *day*." Eventually, the VE said the plaintiff could not perform her past relevant work if some unclear aspect of Dr. Purswani's opinion were included in the RFC. However, it could just as easily have been the fact she could only stand for an hour at a time. The Commissioner also points out that this makes no difference because none of these restrictions were included in the RFC. However, this leaves the opinion of the non-examining State agency physician as the only evidence that treating physician Dr. Hanson and consultative examining physician Dr. Purswani were not correct. In this circumstance, where plaintiff *must* be able to perform the

12

job of pharmacy technician to be found not disabled, it is not substantial evidence.

The evidence from her treating doctor and from Dr. Purswani indicates that the plaintiff has, at best, an inability to walk continuously for more than 30 minutes, or to stand continuously for more than one hour. The Court could remand the case to the Commissioner for inclusion of these in the question to the VE. However, common experience and observation indicates that pharmacy technicians stand and walk and stand for greater periods than these without any opportunity to sit down. Under the unique facts of this case, considering the supported opinion of her treating physician, and her age and attendant status under the Medical-Vocational Guidelines, it would be unfair to subject her to further delay before the Commissioner arrives at the inevitable conclusion that she is not capable of doing her past relevant work and is thus disabled.

It is therefore respectfully recommended that the case be remanded to the Commissioner for an award of disability insurance benefits. It is further recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be DENIED.[3]

Respectfully submitted,

 s/ Dennis H. Inman 
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).